UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WIZIQ, INC., <br><br> Defendant. | CIVIL ACTION <br> NO. 4:21-10694-TSH |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Docket No. 13)**

**February 28, 2022**

**HILLMAN, D.J.**

On April 26, 2021, plaintiff Rothschild Broadcast Distribution Systems, LLC brought this action against defendant WizIQ, Inc. for patent infringement. On June 11, 2021, the plaintiff served the defendant. After the defendant failed to file a responsive pleading, the plaintiff moved for a default, which the Clerk entered on August 20, 2021. A month later, the plaintiff moved for a default judgment. (Docket No. 13). For the following reasons, the Court ***grants*** the motion.

**Background**

In October 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,856,221 ("the '221 Patent"), which the plaintiff, a Texas limited liability company, now owns. The invention underlying the '221 Patent provides a "method and system for on-demand storage and delivery of media content." According to the complaint, while prior media delivery systems

allowed on-demand media providers to charge only flat rates, this invention allows media providers to charge variable rates based on usage.

The defendant sells media content storage and delivery systems, including the WizIQ video conferencing platform. The defendant's products, like the plaintiff's invention, store and deliver media content. The plaintiff alleges that the defendant's products infringe the '221 Patent.

## Legal Standard

An entry of the defendant's default constitutes an admission of all well-pleaded facts in the plaintiff's complaint. *See Securities and Exchange Commission v. Esposito*, 260 F. Supp. 3d 79, 84 (D. Mass. 2017). Where the plaintiff's complaint is not for a "sum certain," the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

A court may order a default judgment where the court "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). Once the court is satisfied of its authority to enter the default judgment, the court assesses damages. *See N.E. Carpenters Central Collection Agency v. Whipple Construction Inc.*, 2019 WL 3573483, at *3 (D. Mass. Aug. 6, 2019) (citing *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 34 n.7 (1st Cir. 1980)).

## Discussion

*1. Jurisdiction*

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has personal jurisdiction over the defendant through the defendant's alleged activities in the forum state, Massachusetts. Taking as true the plaintiff's allegations that the defendant offers its infringing product for sale in Massachusetts, the plaintiff's claim directly arises from the

defendant's activities in the state. *See Avocent Hunstville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324 (Fed. Cir. 2008) (in the ordinary patent infringement suit, specific jurisdiction is discerned from the sale of the allegedly infringing product in the forum). By the same token, the defendant's contacts with Massachusetts are alleged to be purposeful, not mere happenstance. *See Hasbro Inc. v. Clue Computing Inc.*, 994 F. Supp. 34, 44 (D. Mass. 1997). Finally, the exercise of personal jurisdiction over the defendant does not appear to be unreasonable. *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1002-03 (Fed. Cir. 2018).

## 2. Cognizable Claim for Relief

In evaluating a motion for default judgment, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002). The plaintiff alleges one count of patent infringement under 35 U.S.C. § 271.

To establish a claim for direct patent infringement under 35 U.S.C. § 271(a), a plaintiff must show that the defendant "makes, uses, offers to sell, or sells any patented invention" in the United States. A claim of patent infringement meets minimum pleading standards when it specifically identifies the accused product and alleges that the accused product meets each element of at least one claim of the patent. *See Disc Disease Solutions Inc. v. VGH Solutions*, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018); *AnywhereCommerce, Inc. v. Ingenico, Inc.*, 517 F. Supp. 3d 45, 53-54 (D. Mass. 2021); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2020 WL 2079422, at *7 (D. Mass. Apr. 30, 2020).

Here, the complaint alleges that the defendant's WizIQ video conferencing platform, among other associated products, infringe at least claim 7 of the '221 Patent. Below are the elements of claim 7 as compared to the complaint's corresponding allegations.

| **Claim 7 of the '221 Patent** | **Plaintiff's Complaint** |
|---|---|
| A method for storing media content and delivering requested media content to a consumer device, the method comprising: | "The Product practices a method of storing (e.g., cloud storage) media content (e.g., conference recording) and delivering requested media content (streaming video conferencing, recorded videos, chats, texts, etc.) to a consumer device (e.g., mobile device with WizIQ app or software)."  Compl. at ¶ 25. |
| Receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | "The Product necessarily includes a receiver configured to receive a request message including data indicating requested media content (e.g., the Product must have infrastructure to receive a request to store recorded media content or to stream recorded media content on a smartphone; additionally, the request message must contain data that identifies the content to be stored or streamed) and a consumer device identifier corresponding to a consumer device (e.g., the user credentials are used to access the contents of the Product)."  Compl. at ¶ 26. |
| Determining whether the consumer device identifier corresponds to a registered consumer device; and | "The Product necessarily determines whether the consumer device identifier corresponds to the registered consumer device (e.g., a user must be a registered user to access the Product's services)."  Compl. at ¶ 27. |
| If it is determined that the consumer device identifier corresponds to the registered consumer device, then: determining whether the request message is one of a storage request message and a content request message; and | "The Product provides for both media downloads and/or storage, and media streaming.  After a successful login, the Product necessarily determines whether the request received from a customer is a request for storage (e.g., recording or storing content) or content (e.g., streaming of media content)."  Compl. at ¶ 28. |
| If the request message is the storage request message, then determining whether the requested media content is available for storage; and | "The Product verifies that media content identified in the media data of the storage request message (e.g., request to record content) is available for storage in order to prevent data errors that would result from attempting to store content that is not available for storage."  Compl. at ¶ 29. |

| | |
|---|---|
| If the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | "If a customer requests content (e.g., live steaming of media content), then a processor within the Product necessarily initiates delivery of the content to the consumer's device." Compl. at ¶ 30. |
| Wherein the media data includes time data that indicates a length of time to store the requested media content; and | "The media data includes data and time information to identify conference start and stop times, as well as meeting length. Time data may also indicate a length of time to store the requested media content (e.g. a user is allowed to store media content for a retention period configured by the user per their subscription level)." Compl. at ¶ 31. |
| The first processor is further configured to determine whether the requested media content exists; and | "The Product must first determine whether the requested media content exists prior to initiating delivery in order to prevent data errors that would result from attempting to transmit media content that does not exist (e.g., the product must verify that a particular requested data is stored in the cloud). Also, a user can view the history of media content and the processor can identify the existence of that particular media content." Compl. at ¶ 32. |
| If the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | "After the processor determines whether the requested media content is available, it determines whether there are restrictions associated with the requested media content (e.g., user access restrictions, etc.)." Compl. at ¶ 33. |

The complaint also includes screenshots from the defendant's website demonstrating how the defendant's products align with the elements of claim 7. Thus, accepting as true the well-pleaded factual allegations -- that the plaintiff owns the '221 Patent, and that the defendant is making, using, selling, offering for sale in the United States a product that infringes the plaintiff's patented invention -- the plaintiff's complaint states a claim for relief. *See Zinganything, LLC v.*

5

*Import Store*, 158 F. Supp. 3d 668, 672 (N.D.O.H. 2016); *Oakley Inc. v. Great L and H Trading Inc.*, 2012 WL 1302407, at *2 (C.D. Cal. Oct. 26, 2012).

### 3. Opportunity to Object

The plaintiff alleges, on information and belief, that the defendant may be served through its agent, Corporation Service Company, in Delaware. The plaintiff served the defendant on June 11, 2021. The plaintiff served the defendant again on November 16, 2021. Service was accepted by Lynanne Gares, a "litigation management services leader" at Corporation Service Company. To date, the defendant has not filed an answer or otherwise appeared in the action. It appears that the defendant has had a fair opportunity to object to the entry of a default judgment. The Court is satisfied that it has the authority to enter a default judgment.

### 4. Damages

The "two methods by which damages are usually calculated" in patent infringement cases are "assessment of actual damages (the profits the patentee lost due to the infringement) or, if actual damages cannot be ascertained, determination of a reasonable royalty rate." *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990). "A reasonable royalty 'may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee.'" *Id.* (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). "A single licensing agreement, without more, is insufficient proof of an established royalty." *Id.* at 1146.

In an affidavit attached to the motion for a default judgment, plaintiff's counsel asserts that according to a website, zoominfo.com, the defendant's annual revenue is $44 million. Plaintiff's counsel also states, upon information and belief, that the defendant has been using technology covered by the plaintiff's patent for at least the past four years. Plaintiff's counsel further avers

6

that generally accepted royalty rates for patent licensing are from three to six percent of the licensee's gross sales. Based on these figures, plaintiff's counsel suggests that damages should equal $1.32 million. Alternatively, plaintiff's counsel avers that the plaintiff has previously licensed the patent, for life, for one-time payments ranging from $6,000 to $40,000.[1]

The Court finds unpersuasive plaintiff's assertion that the defendant's annual revenue is $44 million. The plaintiff provides only a screenshot from a website, zoominfo.com, which describes the defendant as being based in North Carolina and headquartered in India -- contrary to the allegations in the complaint -- and with revenue of $44 million. It is entirely unclear from the record how the information on zoominfo.com is compiled or derived.

The Court finds more persuasive plaintiff's counsel's averment that the plaintiff has previously licensed the '221 Patent for one-time payments ranging from $6,000 to $40,000. Following the hearing on this motion, the Court asked the plaintiff to submit information concerning its ten most recent license agreements involving the '221 Patent. After reviewing that information, the Court finds that a reasonable royalty for the '221 Patent in this case is a one-time payment of $20,000.00. Accordingly, the Court assesses damages in that amount.

## Conclusion

For the reasons stated, the plaintiff's motion for a default judgment is granted. The plaintiff shall be awarded a default judgment in the amount of $20,000.00.

**SO ORDERED**

                                                             */s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[1] The plaintiff also requests, without elaboration, $10,000 in attorney's fees and costs. That request is denied.